IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY LOUIS YOTTER, II,

      Plaintiff,

v.                                                                                               No. CV 17-202 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Anthony Louis Yotter, II's, *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 17), filed September 8, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision*, (Doc. 20), filed November 7, 2017; and Mr. Yotter's *Reply in Support of Motion to Reverse and Remand for a Rehearing*, (Doc. 21), filed November 17, 2017.

On July 30, 2013, Mr. Yotter filed an application for disability insurance benefits alleging disability beginning June 12, 2009. (AR 94-95). Mr. Yotter's application was denied initially on October 11, 2013, (AR 105-06), and upon reconsideration on May 8, 2014, (AR 121-22). Mr. Yotter requested a hearing before an Administrative Law Judge ("ALJ"), which was granted, and a hearing was held on November 12, 2015, before ALJ Eric Weiss. (AR 57-93). Mr. Yotter and his wife, Angie Nunez-Yotter, testified at the hearing, along with Karen Provine, an impartial vocational expert ("VE"). (AR 57). Michael Armstrong, Mr. Yotter's current counsel, represented him at the hearing. *Id.*

On January 7, 2016, ALJ Weiss issued his decision finding Mr. Yotter not disabled between his alleged disability onset date and the date he was last insured. (AR 26-51). Mr. Yotter requested review by the Appeals Council, (AR 22), which was denied, (AR 1-4), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Mr. Yotter has appealed to this Court alleging the ALJ committed reversible error by: (1) improperly evaluating and weighing the opinions of Mr. Yotter's treating physicians; (2) failing to analyze medical opinions at step three of the sequential evaluation process; (3) applying an incorrect legal standard when evaluating the opinions of state agency non-examining consultants; and (4) improperly questioning the VE. (Doc. 17 at 2). The Court has considered the Motion, Response, Reply, and the relevant law. Additionally, the Court has meticulously reviewed the entire administrative record. Because the ALJ did not err in evaluating and weighing the opinions of Mr. Yotter's treating physicians, and any other error committed was harmless, the Court finds that Mr. Yotter's Motion should be **DENIED**.

**I.      Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The ALJ's failure to apply the correct legal standards or demonstrate that he has done so is grounds for reversal. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. § 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III. Background

Mr. Yotter alleged disability due to post-traumatic stress disorder ("PTSD"), depression, anxiety, bipolar disorder, shoulder impingement/bursitis, hearing problems,

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

right eye problems, gastrointestinal problems, and high blood pressure. (AR 208). At step one, the ALJ determined Mr. Yotter did not engage in substantial gainful activity between his alleged disability date and the last date he was insured. (AR 28). At step two, the ALJ found Mr. Yotter has the following severe impairments: PTSD, bipolar II disorder not otherwise specified, mood disorder not otherwise specified, left and right shoulder and biceps tendinitis/bursitis, and lumbar disc herniation. *Id.*

At step three, the ALJ found none of Mr. Yotter's impairments, either singly or in combination, met or medically equaled a Listed impairment. (AR 29). Regarding Mr. Yotter's mental impairments, the ALJ found Mr. Yotter has only moderate impairments in daily living, social functioning, and concentration, persistence, and pace, and no prolonged episodes of decompensation. (AR 30-31). The ALJ focused on Mr. Yotter's own testimony, though he did note that two psychotherapists consistently described Mr. Yotter as friendly, cooperative, candid, and actively engaged in therapy. (AR 30).

Prior to step four, the ALJ concluded Mr. Yotter has the residual functional capacity to perform light work with the following limitations: Mr. Yotter may frequently stoop, occasionally climb ladders, but never climb ropes or scaffolds; occasionally reach overheard; and frequently reach front and laterally with his arms. (AR 32). As for nonexertional impairments, Mr. Yotter can adjust to routine changes in work settings and maintain concentration, persistence, and pace for two hours at a time with normal breaks, but he is limited to understanding, remembering, and carrying out simple instructions and making commensurate work-related decisions. *Id.* Finally, Mr. Yotter "is able to interact occasionally with supervisors, co-workers, and the public." *Id.*

In formulating Mr. Yotter's RFC, the ALJ exhaustively discussed the testimony at the hearing and the medical evidence of record, including Mr. Yotter's and his wife's statements, psychotherapy treatment notes from treating physicians Jolanta Gurdek, M.D., and Karen Cusack, Ph.D., and the opinions of agency non-examining consultants. (AR at 33-46). Ultimately, the ALJ gave the opinions of the agency consultants "great weight" because they were consistent with the evidence as a whole. (AR 46). On the other hand, the ALJ discounted Mr. Yotter's and his wife's statements because they were not consistent with the record. (AR 35, 47).

Regarding Dr. Cusack, the ALJ gave her opinion limited weight after finding that it was inconsistent with the medical record as a whole and her own treatment notes. Dr. Cusack opined that Mr. Yotter is markedly limited in activities of daily living and social functioning. (AR 47, 714-15). But, the ALJ noted that Dr. Cusack indicated Mr. Yotter has only slight or moderate limitations elsewhere in her assessment. (AR 711, 713). Further, Dr. Gurdek did not find marked limitations in daily living, and Dr. Cusack's own treatment notes showed Mr. Yotter improved his anger management, social isolation, sleep patterns, hygiene, and daily activities. (AR 48). The ALJ supported these findings with specific citation to Dr. Cusack's notes. *Id.*

The ALJ also assigned Dr. Gurdek's opinions limited weight because they were inconsistent with the record as a whole and unsupported by her own notes. (AR 49). First, the ALJ cited the fact that Dr. Gurdek's and Dr. Cusack's opinions conflicted regarding which of Mr. Yotter's impairments are marked. (AR 48). Second, the ALJ cited Dr. Gurdek's records that Mr. Yotter was frequently calm and cooperative, maintained good eye contact, was clean and well groomed, and reported he was in a reasonably

6

good mood. *Id.* Further, Dr. Gurdek described Mr. Yotter as logical and goal directed, and his memory and cognition as "grossly intact." *Id.* Although Dr. Gurdek assigned Mr. Yotter low Global Assessment of Functioning scores, the ALJ found the scores relied in part on Mr. Yotter's relational stress with his nephew, which is not relevant to a disability evaluation. (AR 48-49).

At step four, the ALJ determined Mr. Yotter is unable to perform his past relevant work given his RFC. However, at step five, based on the VE's testimony, the ALJ concluded that Mr. Yotter can perform the jobs existing in significant numbers in the national economy, namely photocopying machine operator, marker, and housekeeper/cleaner, as those jobs are defined by the Dictionary of Occupational Titles ("DOT"). (AR 50). The VE testified that a person of Mr. Yotter's age, experience, and RFC could perform the above jobs even with Mr. Yotter's nonexertional impairments. (AR 92-93). Accordingly, the ALJ held that Mr. Yotter was not disabled at any time between his alleged onset date and the date he was last insured. (AR 51).

**IV. Analysis**

In his Motion, Mr. Yotter claims the ALJ committed reversible error by: (1) improperly evaluating and weighing the opinions of Dr. Cusack and Dr. Gurdek; (2) failing to analyze Dr. Cusack's and Dr. Gurdek's opinions at step three; (3) failing to incorporate the state agency non-examining consultants' opinions into Mr. Yotter's RFC; and (4) improperly questioning the VE about "occasional" interaction with supervisors, coworkers, and the public. (Doc. 17 at 2). The Commissioner first responds that the ALJ properly evaluated, weighed, and discounted Dr. Cusack's and Dr. Gurdek's opinions. (Doc. 20 at 4-13). The Commissioner concedes error regarding the state agency

7

consultants, but she argues the error is harmless. *Id.* at 13-16. Finally, the Commissioner denies that the ALJ's question was improper. *Id.* at 16-18.

1. <u>*Whether the ALJ erred in considering and weighing Dr. Cusack's and Dr. Gurdek's Opinions*</u>

At step four, the ALJ gave both Dr. Cusack's and Dr. Gurdek's opinions limited weight because they were inconsistent with the record and unsupported by their own treatment notes. (AR 47-49). Mr. Yotter argues the ALJ did so without supporting his decision with adequate reasoning or analysis. (Doc. 14 at 13-19). The Commissioner responds that, on the contrary, the ALJ rejected those opinions for good reasons that are supported by the record. (Doc. 20 at 8-13).

ALJs must evaluate and weigh every medical opinion in the record. 20 C.F.R. § 416.927(c); *see* Social Security Ruling "SSR" 06-03p, 2006 WL 2329939 (Aug. 9, 2006). In deciding how much weight to give a source's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by objective medical evidence, and whether the opinion is consistent with the record as a whole. § 416.927(c)(1)-(6). An ALJ need not explicitly discuss every single factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" he gave to the opinion "and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996). Put differently, the reasons must be sufficiently specific to permit meaningful review. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that

8

appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."); *Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) (reversing where ALJ listed factors considered but not specific evidence supporting conclusion).

In considering medical opinions, an "ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin*, 365 F.3d at 1219. Rather, if an ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Finally, the ALJ may not reject a medical opinion based on lay speculations or assumptions, including an unsupported assumption that a medical opinion is based solely on a claimant's subjective statements. *See Langley*, 373 F.3d at 1121.

   a. *Dr. Cusack's Opinions*

Mr. Yotter met Dr. Cusack for individual psychotherapy several times between 2013 and 2014. Although Mr. Yotter reported social isolation, anger issues, and impaired sleep, and called the VA National Suicide Hotline while he was receiving therapy, Dr. Cusack indicated Mr. Yotter was consistently well groomed, logical and goal oriented, in no acute distress, and that he denied suicidal or homicidal ideation and was actively engaged in his therapy. (AR 40-42). On a Medical Assessment of Ability to do Work-Related Activities (Mental), Dr. Cusack opined that Mr. Yotter has only slight limitations in understanding and memory and a mix of slight and moderate limitations in

9

sustaining concentration and persistence. (AR 710). However, when evaluating whether Mr. Yotter met a Listing impairment, Dr. Cusack indicated that Mr. Yotter is markedly limited in activities of daily living and social functioning. (AR 712).

The ALJ first discounted Dr. Cusack's opinions because they were inconsistent with her own treatment notes. The ALJ noted that although Dr. Cusack opined that Mr. Yotter is markedly limited in daily living and social functioning, Dr. Cusack indicated that Mr. Yotter has only slight or moderate individual limitations. (AR 710-11). More specifically, the ALJ found it inconsistent that Mr. Yotter is only slightly limited in his ability to work in coordination with others, yet is supposedly markedly limited in social functioning. (AR 47).

Further, the ALJ found Dr. Cusack's opinions contradicted other evidence. The ALJ emphasized Mr. Yotter's testimony that he is his children's primary caretaker, that he performs daily chores, cares for his personal needs, and drove himself to appointments. (AR 48). Also, Dr. Gurdek did not agree that Mr. Yotter is markedly limited in performing daily activities. (AR 48, 714). Regarding social activities, the ALJ again recalled Mr. Yotter's testimony, this time that he attends family functions, visits his father, interacts with his neighbor, and goes to church. (AR 48). Finally, the ALJ considered Dr. Cusack's notes and found that they generally showed improvement in social interaction. *Id.*

On review, the Court finds the ALJ gave two specific reasons for discounting Dr. Cusack's opinion: inconsistency with the record and inconsistency with her treatment notes. The ALJ cited specific records and testimony in support of these conclusions, including Dr. Cusack's own notes, Dr. Gurdek's findings, and Mr. Yotter's testimony.

Accordingly, the ALJ provided good reasons, tied to the evidence, that are sufficiently specific to permit meaningful review. The Court therefore finds that the ALJ did not err in his consideration and weighing of Dr. Cusack's opinion.

Mr. Yotter protests that his and his wife's testimony "clarified" their statements and that the ALJ should have deferred to Dr. Cusack because she was a treating physician. (Doc. 17 at 16). Mr. Yotter says he only watches his children until his wife comes home and that he must sometimes ask his neighbor for help picking up the children. *Id.*; (AR 71, 78). The ALJ considered this evidence and gave Mr. Yotter and his wife's testimony limited weight as it was inconsistent with medical evidence. (AR 47). As discussed, the Court may not substitute its judgment for the Commissioner's based on its own opinion of this evidence. Put differently, the Court may not reverse and remand based on how it views Mr. Yotter's and his wife's statements and Dr. Cusack's credibility as a treating physician.

### b. Dr. Grudek's Opinions

On January 9, 2012, Mr. Yotter first visited Dr. Grudek for psychotherapy. (AR 607). Between January 2012 and May 2013, Mr. Yotter exhibited varying levels of anger and anxiety, but his condition improved to the extent that he reported feeling good and "happy." (AR 35-39). Throughout these visits, Mr. Yotter was appropriately groomed, logical and goal oriented, with memory and cognition "grossly intact." *Id.* On July 19, 2013, Dr. Gurdek reported that Mr. Yotter had stopped taking his medications and experienced a manic episode. (AR 40). After restarting his medication, Mr. Yotter showed improvement. (AR 40-41). Ultimately, when assessing Mr. Yotter's mental RFC, Dr. Grudek opined that Mr. Yotter has slight to moderate limitations in understanding

11

and memory and in sustained concentration and persistence. (AR 713). When evaluating whether Mr. Yotter met a Listing impairment though, Dr. Grudek opined that Mr. Yotter has marked limitations in maintaining social functioning, and marked difficulties in concentration, persistence, and pace. (AR 714-15).

In his decision, the ALJ considered Dr. Gurdek's opinions and assigned them low weight as they were inconsistent with her RFC assessment and inconsistent with her own treatment notes. As discussed, Dr. Gurdek noted only slight or moderate limitations in understanding, memory, and sustained concentration in her RFC assessment, and the ALJ found that inconsistent with the marked limitations Dr. Gurdek checked elsewhere. (AR 48). Regarding her treatment notes, the ALJ noted that Dr. Gurdek regularly wrote that Mr. Yotter was calm, cooperative, clean and well-groomed, logical and goal-oriented, and showed intact memory and cognition. *Id.* These findings did not support marked limitations, according to the ALJ, and Dr. Gurdek's opinions lacked internal support because she did not specify what tests she ran to evaluate Mr. Yotter's mental functioning. *Id.* Finally, Dr. Gurdek's opinion that Mr. Yotter is markedly limited in concentration, persistence, and pace, conflicted with Dr. Cusack's opinion that Mr. Yotter was not markedly impaired in that area. *Id.*

Here again, the ALJ gave two specific reasons why he assigned Dr. Gurdek's opinion limited weight: it was inconsistent with her own notes and with other medical evidence. Here, as before, the ALJ cited specific findings and inconsistencies in the evidence and how Dr. Gurdek's treatment notes did not support her findings of marked limitations. Finally, the ALJ compared Dr. Cusack's opinion with Dr. Gurdek's and found them incompatible. This is not a case where the ALJ stated Dr. Gurdek's opinion was

12

inconsistent with the record and left it at that. *See Langley*, 373 F.3d at 1119-23. Accordingly, the Court finds the ALJ did not err in his consideration and rejection of Dr. Gurdek's opinion.

Mr. Yotter argues again that other evidence explains Dr. Gurdek's findings. Specifically, Mr. Yotter states his wife must remind him to groom himself, (Doc. 17 at 15), and that Mr. Yotter's impairments are the reason for inconsistencies between Dr. Gurdek's findings and Dr. Cusack's findings, (Doc. 21 at 3-4). As discussed, the Court cannot substitute its judgment for the Commissioner's, therefore the Court may not reverse and remand based on Mr. Yotter's explanations and rationale. Mr. Yotter also argues that the ALJ failed to consider factors under 20 C.F.R. § 404.1527, including the length and frequency of examination, the nature and extent of the treatment relationship, consistency with the record as a whole, and whether psychiatry is Dr. Gurdek's specialty. (Doc. 17 at 15). But, an ALJ is not required to explicitly discuss every factor under § 404.1527. *Oldham*, 509 F.3d at 1258. The Court therefore finds that the ALJ did not err in considering and rejecting either Dr. Cusack or Dr. Gurdek's opinions.

   2. <u>Whether the ALJ erred at Step Three</u>

Next, Mr. Yotter argues that the ALJ erred by failing to discuss Dr. Cusack and Dr. Gurdek's opinions at step three of the SEP. (Doc. 17 at 17-19). As discussed, Dr. Cusack and Dr. Gurdek both indicated Mr. Yotter had marked limitations that satisfied the Listing impairments. (AR 711-15). At step three, the ALJ only briefly mentioned Dr. Cusack and Dr. Gurdek's opinions, and he did not discuss their opinions as to Mr.

13

Yotter's marked limitations. (AR 30-31). Mr. Yotter claims the Court must reverse and remand for the ALJ to consider this evidence at step three.

Although an ALJ is required to discuss medical evidence at step three, failure to do so is harmless error where "an ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). In *Fischer-Ross*, the ALJ erred by failing to discuss evidence of a claimant's impairments at step three, and the district court reversed. *Id.* at 732. However, the ALJ thoroughly discussed the evidence at steps later in his decision, and the Tenth Circuit found that analysis sufficient to find that the claimant did not suffer a Listed impairment. *Id.* at 734-35. The Tenth Circuit held that "where an ALJ provides detailed findings . . . that confirm rejection of the listings in a manner readily reviewable" elsewhere in a decision, reversal is unnecessary. *Id.* at 734.

This case is indistinguishable from *Fischer-Ross*. In this case, the ALJ did not discuss Dr. Cusack and Dr. Gurdek's opinions regarding Mr. Yotter's marked impairments at step three. But, as discussed, the ALJ considered and rejected the opinions at step four and five, just as the ALJ did in *Fischer-Ross*. The ALJ provided detailed reasons and support for rejecting Dr. Cusack and Dr. Gurdek's opinions, therefore the Court finds the ALJ provided sufficient findings and analysis, and any error at step three was harmless.

    *c.  <u>Whether the ALJ erred in failing to incorporate the opinions of Dr. Robinowitz and Dr. Mohney</u>*

Mr. Yotter contends that the ALJ also erred by failing to incorporate all of the opinions of state agency consultants Ralph Robinowitz, Ph.D., and Carol Mohney,

14

Ph.D. (Doc. 17 at 19-21). Both doctors opined that Mr. Yotter is markedly limited in his ability to interact appropriately with the general public. (AR 103, 118-19). Despite giving these opinions great weight, the ALJ did not incorporate them into Mr. Yotter's RFC. (AR 32, 46). Instead, the ALJ wrote that Mr. Yotter is able to "interact occasionally with supervisors, co-workers, and the public." (AR 32).

The Commissioner concedes that the ALJ erred by failing to incorporate Mr. Yotter's marked limitation. (Doc. 20 at 15). But, she argues the error was harmless for two reasons. First, the VE testified that an individual with a marked limitation in interacting with the public may still perform the jobs she identified. (AR 91-92). Second, the Commissioner contends the error was harmless based on the nine-digit occupational code the DOT uses to identify a job. The fifth digit of the code for each job the VE identified is "8", and according to the Commissioner this indicates the jobs require the lowest possible level of interpersonal interaction. (Doc. 20 at 15-16) (citing *Lane v. Colvin*, 643 Fed. Appx. 766, 770 n.1 (10th Cir. 2016)). Thus, the Commissioner argues Mr. Yotter was not prejudiced by the ALJ's omission, and any error was harmless.

In his Reply, Mr. Yotter only argues that the Commissioner is mistaken about the fifth-digit of the occupational code. Mr. Yotter counters that the fifth digit represents the type of interpersonal interaction involved in a job, not the frequency or amount of interaction. (Doc. 21 at 4-8). For instance, jobs like "cafeteria attendant" and "waiter/waitress" have a "7" as the fifth digit of their occupational codes, but they obviously involve frequent interaction with the public. *Id.* at 7. Mr. Yotter does not address the Commissioner's argument about the VE's testimony.

15

At the hearing, Mr. Yotter's attorney asked the VE whether a marked limitation in ability to interact with the general public would rule out any of the jobs the VE identified. (AR 91-92). The VE responded that the jobs she previously identified, photocopying machine operator, marker, and housekeeper, "do not require interacting with the public," so even someone markedly limited in their ability to interact with the public could perform those jobs. *Id.* In his decision, the ALJ found the VE's testimony consistent with the DOT and found Mr. Yotter could perform the three jobs the VE identified.

As discussed, the ALJ is required to discuss and weigh medical opinions in the record. However, an ALJ's failure to do so is harmless when an undiscussed opinion does not conflict with the ALJ's RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165-66 (10th Cir. 2012). Similarly, an ALJ's failure to incorporate limitations into the RFC is harmless error when the claimant could perform the jobs identified by the VE even if the limitations were incorporated. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014); *Lane v. Colvin*, 643 Fed. Appx. 766, 769-70 (10th Cir. 2016) (unpublished). In *Mays*, the Tenth Circuit assumed for the sake of argument that the ALJ failed to weigh certain medical opinions. *Mays*, 739 F.3d at 579. Still, the court held the error was harmless because nothing in the medical opinions prevented the claimant from performing sedentary work. *Id.* In *Lane*, the ALJ did not incorporate a physician's opinion that a claimant could not have frequent or prolonged contact with supervisors and coworkers. *Lane*, 643 Fed. Appx. at 769. Again, the Tenth Circuit held the error harmless because the jobs the VE identified did not require frequent, prolonged contact with others. *Id.* at 770.

Here, the Commissioner admits the ALJ did not discuss or incorporate Dr. Robinowitz's and Dr. Mohney's opinions that Mr. Yotter is markedly limited in his ability to interact with the general public. Despite this error, the VE testified that an individual who is so limited may still perform the jobs of marker, photocopying machine operator, and housekeeper. Although Mr. Yotter disagrees with the Commissioner about the meaning of the DOT occupational codes, he does not dispute the VE's testimony. Given that testimony and the precedent regarding harmless error, the Court finds the ALJ's failure to incorporate Mr. Yotter's marked limitation is harmless. Even if the ALJ had incorporated this marked limitation, Mr. Yotter would still be able to perform jobs existing in significant numbers in the national economy.

> d. _Whether the ALJ erred by describing Mr. Yotter as limited to "occasional" interaction with supervisors, coworkers, and the public_

Finally, Mr. Yotter argues the ALJ impermissibly used the word "occasional" to describe Mr. Yotter's interactional limitations. (AR 32, 88). Mr. Yotter insists that the word "occasional" has a technical meaning and may only be used to describe exertional limitations, not social interactional limitations. (Doc. 17 at 21-22; Doc. 21 at 8-9). More specifically, Mr. Yotter states that the DOT and Social Security Regulations ("SSRs") "do not endorse" the use of qualifiers like "frequent" or "occasional" when describing how often a claimant can interact with supervisors, coworkers, and the public. (Doc. 17 at 21-22; Doc. 21 at 8-9). Because "occasional" may not be used to describe interactional limitations, Mr. Yotter argues the VE's testimony was unclear and unreliable and may not constitute substantial evidence. (Doc. 17 at 21-22). The Commissioner denies that the use of the word "occasional" is impermissible or caused any confusion. (Doc. 20 at 17-18).

At the hearing, the ALJ asked the VE to assume a hypothetical individual who, in part, is able to interact only occasionally with supervisors, co-workers, and the public. (AR 88). The VE stated that such an individual could not perform Mr. Yotter's past work, but that the individual would be able to perform other work. (AR 88-90). On cross-examination, Mr. Yotter's attorney asked the VE to instead assume an individual who is moderately limited in adapting to changes in the workplace, accepting instructions, and responding to criticism from supervisors, and markedly limited in dealing with the general public. (AR 91-92). These limitations reflect Dr. Mohney's assessment. (AR 92). As discussed, the VE answered that such an individual would be able to perform the jobs identified. *Id.* In the end, the ALJ said in Mr. Yotter's RFC that he is limited to "occasionally" interacting "with supervisors, co-workers, and the public." (AR 32).

As defined by SSRs, "occasionally" means "occurring from very little up to one-third of the time," and generally "no more than 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (unpublished); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) (unpublished). "Occasional" is often used in conjunction with physical limitations like lifting and carrying, pushing and pulling, and postural limitations. *See* SSR 96-9p, 1996 WL 374185, at *6. However, Mr. Yotter has not cited any authority forbidding ALJs from using "occasional" to describe how often claimants can interact with others. In fact, the Tenth Circuit has repeatedly affirmed ALJs who limit a claimant to occasional contact with supervisors, coworkers, and the public. *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1175-76 (10th Cir. 2005) (claimant limited to "occasional interaction with coworkers" and no direct public contact); *Chavez v. Colvin*, 654 Fed. Appx. 374, 375 (10th Cir. 2016) (unpublished) (limiting claimant to "no

interaction with the public, and only occasional and superficial contact with co-workers");
*Davison v. Colvin*, 596 Fed. Appx. 675, 680 (10th Cir. 2014) (unpublished) (limiting claimant to "occasional" interaction with supervisors and co-workers, and "no work interaction with the public").

Given this background, the Court finds no error in the ALJ's question and RFC. Mr. Yotter has not cited authority for the proposition that ALJs may not limit claimants to "occasional" interaction with others, even if the DOT and SSRs do not explicitly condone it. The VE did not express confusion, and Mr. Yotter did not object to the question. Moreover, any error here would be harmless because the VE testified that an individual with Mr. Yotter's limitations can still perform the jobs she identified. Thus, even if the ALJ tailored his question and RFC to Dr. Mohney's assessment that Mr. Yotter is markedly limited in his ability to interact with the general public, Mr. Yotter would still be able to perform the jobs the VE identified.

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ did not err in considering and weighing Dr. Cusack's and Dr. Gurdek's opinions or err by describing Mr. Yotter as limited to "occasional" social contact. Although the ALJ erred by failing to incorporate all of Dr. Robinowitz's and Dr. Mohney's opinions into Mr. Yotter's RFC, the error was harmless. **IT IS THEREFORE ORDERED** that Mr. Yotter's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 17), is **DENIED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE